F. A. AND J. J. MONTGOMERY *v.* WILLIAM EVANS et al.

**Interpleader — When Bill Must be Filed.**

One who is sued by two persons upon the same cause of action, must file his bill for interpleader before judgment is obtained against him by one of the persons suing him, unless there be some new developments after the judgment that excuses his delay or furnishes a reason for interpleader.[1]

J. J. Montgomery, under a decree of the Chancery Court of Bolivar county in favor of J. F. Heard, sold the lands of the

---

[1] A person who has been summoned as a garnishee may maintain a bill of interpleader against a plaintiff and the person suing out the garnishment, and he is entitled to an injunction against the collection of the debt he owes until the rights of the parties are adjusted and settled. Henderson *v.* Garrett, 35 Miss. 554.

The maker of a promissory note was summoned as garnishee for the payee. Before he answered, but after he was summoned as garnishee, he had notice of the assignment, but under the advice of counsel he answerd that he was indebted to the payee, and a judgment was accordingly rendered against him in that action. He then filed his bill of interpleader against both judgment creditors; *held*, on demurrer to the bill, that it could not be maintained (the case of Oldham *v.* Ledbetter, 1 How, 47, so far as it relates to interpleader by a garnishee, criticised). Yarbrough *v.* Thompson, 3 S. & M. 291.

A garnishee who, with knowledge of the assignment of the debt, contests with plaintiff in attachment, cannot, after the judgment against him, maintain interpleader against plaintiff and such assignee. He who asks equity to compel others claiming a debt due by him to interplead must do so before putting them to the test of trials at law. McKinney *v.* Kuhn, 59 Miss. 186.

defendants therein as special commissioner, and F. A. Montgomery became the purchased, for $679.40. The sale was reported to the court and confirmed in May, 1881. Before the purchase money was paid by the purchaser, they were both served with a writ of garnishment from the Chancery Court of Hinds county, at the suit of appellees, William Evans and wife, against J. F. Heard, returnable to the August term, 1881, of that court, and at the same time a like writ was served on F. A. Montgomery that had been issued on a judgment of the Circuit Court of Bolivar county in favor of Mary E. Heard against J. F. Heard, and a short time afterwards it was served on J. J. Montgomery, the commissioner.

Both the garnishees answered the Hinds county writ, setting up all the facts, and after the service of the Bolivar county writ and before the trial in the Chancery Court of Hinds county, J. J. Montgomery filed therein an amendment answer, setting out the service on him of the Bolivar county writ. On the trial of the garnishment in Hinds County Chancery Court, Mary F. Heard, plaintiff in the Bolivar county garnishment, asked to have an issue made up to try the right to the money in the hands of the commissioner, but this application was denied and a decree was rendered against both the garnishees in favor of Evans and wife.

Appellants filed their bill October 24, 1881, in the Chancery Court of Bolivar county, against William Evans and wife, and Mrs. Mary E. Heard and the sheriff of Bolivar county, setting up these facts, and that the Bolivar county judgment was recovered in January, 1879, and was duly enrolled and still unsatisfied; that the Hinds county judgment was recovered in February, 1881, and was not enrolled in Bolivar county until March 8, 1881; that the sheriff was about to levy execution against them on the Hinds county decree; that a judgment would also be rendered against them in the Circuit Court of Bolivar county; that they did not know to whom the money should be paid and that they had no interest in the controversy between the two creditors, who should interplead each other to establish their claim to said fund, and prayed that such interpleading be required, and that the sheriff be enjoined from levying the execution issued by the Chancery Court of Hinds county, then in his hands.

Mrs. Mary E. Heard answered, admitting all the allegations of

the bill, and insisted that the money be paid to her. William Evans' wife filed a motion to dissolve the injunction.

The motion to dissolve was sustained and a decree was rendered against complainant for $100 damages. From that decree they appealed.

APPEALED from Chancery Court, Bolivar county, W. G. PHELPS, Chancellor.

Affirmed, April 16, 1883.

*Attorneys for appellant, Nugent & McWillie.*

*Attorneys for appellees, J. & J. M. Shelton.*

Brief of Nugent & McWillie:

We insist in this case that the fund was in *custodia legis* and not subject to garnishment. "In such sales," says the court, in Cocke *v.* Simmins, 57 Miss. 201, "the commissioner is not the real vendor of the land. The court is the real vendor and employs a commissioner merely as its instrument in consummating the transaction. The commissioner is less than an agent, for his acts are not binding until they have received the sanction of the court, after they have been performed. When he acts, he executes the will of the court, not his own. He is the body and the court the animating spirit which puts him in motion, and directs and gives validity to his acts. He has no rights in the estate, and parts with none by his deed. He is appointed by the court to execute its will and effectuate its purposes, and may be discarded at any stage in the progress of the transaction and another employed in his stead."

Such being the character of the commissioner in legal contemplation, the funds in his hands must be treated as in the custody of the court, and claimants of the fund must come into the court to establish their right to it. The general principle that money in *custodia legis* is not subject to garnishment is too well recognized to admit of controversy. See Drake on Attach. (5th Ed.), § 251, and cases cited.

The case of Thrasher *v.* Buckingham & Co., 40 Miss. 73, in which executors and administrators were declared liable to gar-

nishment, does not affect the rule, for that decision was founded on a special statute making them liable. Rev. Code 1857, 379, art. 24.

In Burleson *v.* Milan, 56 Miss. 401, it was held, against a great array of authorities to the contrary, that money collected on execution was liable to be garnished in an attachment while in the hands of a constable or sheriff, prior to the return day of the execution, but the reasoning upon which that conclusion was arrived at has no application to the case of a commissioner having in his hands the proceeds of land sold under a decree of court, and especially where his report of sale has not been acted upon by the court at the time of the service of garnishment. As stated in the case of Cocke *v.* Simmons, *supra,* it is the court, and not the commissioner, that makes the sale, and until confirmation the transaction is *in fieri.* The court may not approve what has been done, and in such case the purchaser would be entitled to have his money refunded, and the court would refund it. When the report of sale is confirmed, the acts of the commissioner become by adoption those of the court, but until then, the transaction is *inchoate,* and no sale can be said to have been completely effected, for want of the influence of that "animating spirit" to which the court is likened in the opinion quoted. The commissioner is the mere arm of the court, employed for the execution of its will, and when he has made sale, it is his duty to render a report of it to the court for confirmation, and deliver his deed and pay over the proceeds, *or not,* as the court may direct. If he pays over the money to the complainant as soon as he makes the sale, it is upon a mere assumption of responsibility, and in nowise affects the right of the defendant to have the sale set aside, with a controversy left over between the purchaser and commissioner.

It will be observed that the case of Burleson *v.* Milan, *supra,* is founded entirely upon the duty imposed upon the constable or sheriff of "immediately upon demand paying over to the plaintiff, or his attorney, the money made by virtue of the execution, and due to him." There is no such obligation resting upon the commissioner, and in justice to all concerned he ought not to pay over the money until his report of sale has been confirmed. Another material difference between the two cases is seen in the fact already referred to, that the commissioner's sale is dependent upon the con-

firmation of the court for its validity, while no further act of the
court is necessary in respect to sales made by a sheriff or constable;
all that remains to be done by these officers is to pay over the
money, no further intervention of the court being necessary.

In the case of Winfield v. Bacon, 24 Barbour (N. Y.), 154,
which was a bill of interpleader by a receiver of funds arising from
a sale of lands, made under order of court, to which funds two per-
sons made claim, the court held that "the receiver was only the
hand of the court," and it would be unjust to require him to liti-
gate the two suits either at his own expense or that of the fund,
and that the only escape from the labyrinth was for him, by bill,
to compel the parties to interplead in the court of which he was
receiver and settle their rights between themselves, to the end that
the party entitled to it should receive the money, and he who had
asserted an unfounded claim should be visited with costs.  The
motion to dissolve the injunction granted on the bill of interpleader
was denied.

Were the complainant a private person having funds belong-
ing to the debtor of the defendant, instead of the commissioner of
the court, he would still be entitled to his bill of interpleader under
the facts and circumstances of this case.  3 Daniels Chy. Pr. 1560
et seq.

We insist, though, that the commissioner was not subject to
garnishment, particularly before confirmation of sale, but, even if
we treat him as subject to garnishment, we must not lose sight of
his character as commissioner in considering the objection that he
had not paid the money into court.  *In his hands the money is to
be treated as being in court* until some default is shown on his part.
The record shows here that he was garnished before he could get
his report confirmed.

If the commissioner was not subject to garnishment, it is use-
less to consider the grounds of motion to dissolve and of demurrer,
but treating him as subject to garnishment, the fund in legal
contemplation was in court while properly in the hands of one who
is held to be the mere "hand of the court;" and, besides, the
omission to offer to pay the money into court does not render the
bill demurrable.  See 3 Daniels Chy. Pr. 1563, and cases cited in
note 10.

So also, even treating the commissioner as a private person,

there is no merit in the objection that the bill was not filed until after the rendition of judgment in the Hinds county garnishment proceeding. Oldham v. Ledbetter, 1 Howard (Miss.), 43; Preston v. Harris, 2 Cushman, 247.

The Bolivar county judgment creditor, who had really the superior right, tried to assert her right to the fund in the Hinds county court, but her application was denied. Her judgment is much the older, was the first enrolled, and is really the debt to which the fund ought to be applied, but, if .the decree dissolving the injunction is sustained, she must either lose it, or the commissioner be compelled to pay both creditors the amount of the proceeds of the land.

It is against such manifest injustice and such unnecessary expense of litigation that bills of interpleader were designed to operate, and, instead of confining, the courts should favor and extend a remedy as salutary.

Brief of J. & J. M. Shelton:

Conceding in all of its integrity the general principle invoked by appellant's solicitors, and upon which they virtually rest their case, that money *in custodia legis* is not liable to garnishment, we yet confess our utter inability to perceive how the allegations and statements of the bill considered, any possible operation of that principle can work a reversal of this case, even leaving out of view the authority of decisions of the court of last resort in this State, sanctioning departures from that principle.

To proceed at once to the argument of the case, we remark that the bill discloses that the answer of appellant, J. J. Montgomery, to the writ of garnishment sued out at the instance of Evans and wife, from the Chancery Court for the second district of Hinds county, which answer, made on June 24, 1881, admits that said writ was served upon him on May 2, 1881; that the sale made by him as a commissioner of the Chancery Court of Bolivar county, in the case of Jesse F. Heard v. J. B. Brander, Admr., et al., was confirmed on May 4, 1881, and that there then remained in his hands the sum of $527.50, the property of said Jesse E. Heard..

Appellant's solicitors take the position that because said writ was served upon him before the confirmation of such sale, while

the matter was, as they insist, *in fieri,* such service did not fix or fasten a lien upon the money then in his hands, being the proceeds of a sale made for the benefit of Jesse F. Heard, as whose debtor he was garnished at the suit of Evans and wife, but that the service of the writ of garnishment upon him on June 24, 1881, sued out from the Circuit Court of Bolivar county at the instance of Mrs. Heard, did fix or fasten a lien upon said money, because had after confirmation of the sale and, therefore, that Mrs. Heard has the right to said money, and consequently that the motion to dissolve the injunction, as made, as well as the demurrer to the bill, should have been overruled.

This position strikes us as a very strained one, and is not borne out by the case cited for that purpose. That case, Cocke *v.* Simmons, 57 Miss. 201, in so far as it touches upon the character of a chancery commissioner, defines him to be an instrument of the court appointing him, and subject to its will, but it falls far short of sustaining the position that he is not liable to garnishment before the sale made by him pursuant to the decree appointing him receives the sanction of the court by confirmation.

In Holman *v.* Fisher, 49 Miss. 472, it was held that the distributive share of a creditor of an insolvent estate, before ascertainment, in the hands of the executor or administrator thereof, can be garnished, in spite of the statute prohibiting suits against insolvent estates. Funds belonging to an insolvent estate, before ascertainment of the distributive shares of creditors, are peculiarly under the control of the court in which the administration is pending, *i. e., in custodia legis.* The proceeds of a sale made by a chancery commissioner are in no conceivable sense more pecularly so.

In Burleson *v.* Milan, 56 Miss. 399, it was held that a constable may be garnished before the return day of an execution for money collected by him by virtue thereof, and which he is bound to pay over to the plaintiff in execution. This decision was made under section 874, Code 1871, which is precisely the same, the requirement contained therein that affidavit be filed omitted, as section 1783, Code 1880, which is the statute that must control the decision of this case. Appellants' solicitors urge that this decision is founded entirely upon the duty imposed upon a constable of immediately upon demand paying over to the plaintiff or his

attorney the money made by virtue of the execution and due to him.

True it is, and is not the like duty to the party for whose benefit a sale is ordered made imposed upon a chancery commissioner after confirmation of sale, unless, on a showing of superior right made in some legal manner "that animating spirit," the court, should impose upon him the duty of making payment to someone else?

A sale made by a constable or sheriff under execution is not consummated as soon as the money made thereunder reaches his hands, and he is not absolutely "indebted" to the plaintiff in execution as soon as he receives the money, because the execution may be stayed by supersedeas at any time before he pays over such money (see Code 1880, § 1756), or the money made may, on motion, be ordered paid to someone else than the plaintiff in execution. (See Code 1880, § 1762.)

So, then, a sale made by a constable or sheriff is, in a sense, *in fieri* and the money made by him, under execution, *in custodia legis,* so long as such money remains in his hands, or, if a dispute be made as to priority of liens, and he returns the money into court, as it is provided in the statute last above cited that he may do, until such dispute be settled by the court.

A chancery commissioner, before confirmation of sale, stands in precisely the same attitude to the court appointing him as to a sale made by him and the money arising therefrom. Suppose a sheriff or constable garnished before sale, and, consequently, before he can be "indebted to" the plaintiff in execution any proceeds of sale, can it make the least difference as to his liability to garnishment for such proceeds when they shall reach his hands, that he had not, at the time of such service of the writ of garnishment upon him, collected money for the plaintiff in execution, and the statutory duty had not, therefore, become imposed upon him, to immediately, upon demand, pay over to, or, in other words, he had not become "indebted to" the plaintiff in execution, but that he made sale, collected money for, and became "indebted to" the plaintiff in execution, after the service of the writ of garnishment upon him? We submit that it would not, that the service of the writ of garnishment upon him would fasten a lien upon the money as soon as it reached his hands and he became indebted to

the plaintiff in execution, that by analogy, that the service of the writ of garnishment of Evans and wife, attached absolutely to the proceeds of sale made by the commissioner, J. J. Montgomery, for the benefit of Jesse F. Heard, and which are the bone of contention in this case, the moment of confirmation of such sale.

But admitted that the commissioner, J. J. Montgomery, was not indebted to Jesse F. Heard at the time of the service upon him of the writ of garnishment of Evans and wife, yet he became so long before he made answer to the same, admitting that he had in his hands the sum of $527.50, "the property of said Jesse F. Heard."

Whether he was "indebted to" Heard or not, *at the time of answering,* is, in our judgment, the touchstone by which the correctness of the decree in favor of Evans and wife against him must be tested. The writ of garnishment of Evans and wife is in the form prescribed in section 1783, Code 1880, the concluding clause of which provides that like proceedings may be had in all cases of garnishment as in cases of garnishment in attachment, and section 2442, Code 1880, shows conclusively that a garnishee must answer his *indebtedness* to the party as whose debtor he was garnished, not only at the time of the service of the writ upon him, but also since that time, at the time of answering. If he answer "no indebtedness" before the return of the writ, and afterwards, before such return day, he becomes indebted, it is his duty to put in another answer and admit indebtedness. Should he fail to do so, the consequence must be that the plaintiff would be entitled to a judgment against him for want of an answer.

It is so clear to our minds that the decree of the Chancery Court for the second district of Hinds county in favor of Evans and wife was right as to the appellant, J. J. Montgomery, that we forbear to argue at greater length the question of the liability to garnishment of a chancery commissioner before confirmation of sale, and the other questions which the argument of that has seemed to us to make necessary.     *     *     *

Was not the bill for an interpleader between Evans and wife, on the one hand, and Mrs. Heard on the other, filed too late? Is not said decree in favor of Evans and wife good and binding until reversed and impossible of attack collaterally?

In McKinney *v.* Kuhn, 59 Miss. 186, this court say: "It is

well settled, both by reason and authority, that one who asks the interposition of a court of equity to compel others, claiming property in his hands, to interplead, must do so before putting them to the test of trials at law," citing Yarbrough *v.* Thompson, 3 S. & M. 291; Haseltine *v.* Brickey, 16 Grat. 116; Cornish *v.* Tanner, 1 You. & Jer. 333.

And "the remedy by interpleader is afforded to protect the party from the annoyance and hazard of two or more actions touching the same property or demand; but one, who with a knowledge of all the facts, neglects to avail himself of the relief, or elects to take the chances for success in the actions at law, ought to submit to the consequences of defeat. To permit an unsuccessful defendant to compel the successful plaintiffs to interplead is to increase instead of to diminish the number of suits; to put upon the shoulders of others the burden which he asks may be taken from his own."

The case above quoted from, as well as that therein cited from our own reports, are decisive of the question that successful plaintiffs or complainants cannot be successfully called upon to interplead by an unsuccessful defendant, *a nulto fortiori* of the question; that complainants who have received a decree against defendants as garnishees for a sum of money cannot be compelled by those defendants, who have also been garnished by another party who has not recovered judgment against them, to interplead that party and settle between themselves their respective claims to the money, to litigate anew with that party the identical matters that had been adjudicated in their favor on the trial of the issue between themselves and the garnishees, and that, too, only upon a showing of the self-same facts that were urged on the trial of such issue, and none others alleged to have come to their knowledge since such adjudication. We fail to perceive that the cases cited by appellants' brief, Oldham *v.* Ledbetter, 1 How. 43, and Preston *v.* Harris, 2 Cush. 247, militate in the least against the doctrine announced in McKinney *v.* Kuhn, *supra,* and the cases cited therein, and submit that they are not in point. Even if they are in point, McKinney *v.* Kuhn, which contains the latest utterance, must override them.

It was the most manifest duty of appellants, ignorant whether they should pay the money in controversy to Evans and wife or to

Mr. Heard, and desiring to pay it according to the right, to have invoked protection for themselves by seeking an interpleader *before* the recovery of decree therefor by Evans and wife. Dan. Chan. Pl. & Pr., 3rd Am. Ed., 1662-3, and authorities cited in reference 1, on page 1663.

Had the Chancery Court of Bolivar county sustained appellants' bill, and awarded the interpleader sought, it would have imposed upon the shoulders of Evans and wife the burden of appellants' defeat in the Chancery Court for the second district of Hinds county, without a shade of a shadow of a showing for such an imposition, and would, as it seems clear to us, have acted directly in conflict with the doctrine of McKinney *v.* Kuhn, *supra.* The court will bear in mind that the bill does not charge fraud in the recovery of the decree of Evans and wife, nor aver accident, nor allege mistake. Irremediable injury likely to occur to complainants (appellants) is not even so much as hinted at. Indeed, the utter failure of the bill to show any ground to entitle them to the relief sought is passing strange.

The allegations of the bill that "complainants fear that judgment may also be rendered against them in the Circuit Court of Bolivar county," and that "they do not know to whom the money in their hands, or in the hands of said complainant, J. J. Montgomery, ought legally to go," contain the nearest approaches to a ground to entitle them to an interpleader to be found in the whole bill. These allegations, though, were insufficient to entitle them to the relief sought, because the bill shows on its face that they had a full, adequate and complete remedy by appeal to this court from the decree against them in favor of Evans and wife. In this way the liability of the commissioner to garnishment would have been authoritatively settled, and every possible object that could be attained by the bill have been attained. Chancery will refuse relief ordinarily where there is a remedy at law. Weddell *v.* Seal, 45 Miss. 726.

Where relief by an interpleader is sought, the party seeking must show that he can in no other way be protected. Dan. Chan. Pl. & Pr., 3rd Am. Ed., 1661, and authorities cited in reference 1.

The fear of appellants in the premises was as baseless as the fabric of a vision, because the decree of the Chancery Court for the second district of Hinds county in favor of Evans and wife

had settled the question of their right to the money in contro-versy, so far, at least, as, in view of the allegations of the bill, it could be affected by any supposed right of appellants to compel them to interplead with Mrs. Heard and relitigate with her the matters thereby adjudicated in their favor.

The bill makes no showing of danger of injury to complainants from the doubtful and conflicting claims of Evans and wife on the one hand, and Mrs. Heard on the other, as between themselves. A bill of interpleader should make such a showing.  *  *  *

Appellants, garnishees, failed to do what they ought to have done to have Evans and wife contest with Mrs. Heard the right to the money in controversy at that stage of the matter, and ought not to be heard to complain of the consequences of their own failure and to seek redress for themselves by putting the burden of their defeat on the shoulders of Evans and wife.  *  *  *

Admitted for the sake of argument that the decree of the Chancery Court for the second district of Hinds county in favor of Evans and wife is irregular and erroneous, still it is good and binding until reversed, and cannot be attacked collaterally. The decisions in this State are uniform on that point. We cite the following cases: Yarbrough *v.* Thompson, 3 S. & M. 291-294; Smith *v.* Bradley, 6 S. & M. 485; Work *v.* Harper, 2 Cush. 517; Wall *v.* Wall, 6 Cush. 409; Pavisot *v.* Green, 46 Miss. 751; Moore *v.* Ware, 51 Miss. 206; Cary *v.* Dixon, 51 Miss. 593; Hooker *v.* Yale, 56 Miss. 197.

The decree in favor of Evans and wife against appellants is not urged by their solicitors to be void, but only erroneous. Even if it were void, relief could not be had against it by the heroic remedy sought by the bill, because no special equity to entitle them to it is alleged, and they had, as has been shown, another complete remedy in the premises stated. Jones *v.* Coker, 53 Miss. 195; Miller *v.* Palmer, 55 Miss. 323; Life Ins. Co. *v.* Bangs, 103 U. S. S. C. Rep. 780.

OPINION.—*Per curiam:*

All the facts now undertaken to be set up by bill of interpleader were known to Montgomery when he answered the garnishment in the Chancery Court of Hinds county. If dissatisfied with the decree of that court he should have appealed. Mrs. Evans, having

obtained a decree there, cannot, by bill of interpleader, be compelled to relitigate. A party threatened with two suits by different persons, or actually sued by two persons upon that same cause of action, must file his bill for interpleader before judgment at law against him, unless there be some new development after judgment that excuses his delay or furnishes a new reason for interpleader. Kuhn v. McKinney, 59 Miss.

*Affirmed.*